1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10                   **SACRAMENTO DIVISION**
11

12  DAVID LEWIS GLEFFE,                    )     Case No.  2:07-CV-1728-MMS
                                           )
13                      Petitioner,        )     ORDER DENYING PETITION FOR A
    v.                                     )     WRIT OF HABEAS CORPUS
14                                         )
    MIKE MCDONALD, WARDEN,                 )
15                                         )
                        Respondent.        )
16  _____       )

17

18          On August 23, 2007, David Lewis Gleffe ("Petitioner"), a California state

19  prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28

20  U.S.C. § 2254.  On February 8, 2008, Respondent filed an answer.  Petitioner

21  challenges his 2003 convictions for stalking while a restraining order was in effect,

22  witness intimidation, and making criminal threats, and his combined sentence of

23  nine years.  He asserts a number of constitutional violations, including insufficient

24  evidence to support his convictions, lack of a unanimous verdict, improper

25  admission of impeachment evidence, several jury instruction errors, and

26  unconstitutional enhancement of his sentence on the basis of facts not submitted to

27  the jury.  For the reasons set forth below, the court denies the petition.

28

1

**BACKGROUND**

2      The following background facts are adapted from the unpublished decision

3 of the California Court of Appeal.

4      Petitioner's convictions relate to his actions near the end of his romantic

5 relationship with Julie J., the victim in this case.  Petitioner and Julie began dating

6 in March 2002, but by May or June, their relationship began to deteriorate.

7 Between August and September of 2002, several violent confrontations, in

8 combination with Petitioner's erratic behavior, led Julie to obtain two temporary

9 restraining orders against Petitioner.  Despite the restraining orders, however, Julie

10 and Petitioner continued to be in contact.  They drove together to the October 16,

11 2002 hearing at which the second temporary restraining order became permanent.

12 After the permanent restraining order was issued, Julie and Petitioner had sexual

13 relations several times.  Julie testified at trial that she was concerned for her safety

14 and thought that "things would go more smoothly if she eased out of the

15 relationship.

16      On the evening of November 24, 2002, Julie returned home after a day out

17 with friends and found Petitioner outside her apartment.  She called the police from

18 a friend's home, and the police arrested Petitioner for violating the restraining

19 order.  A few days later, Petitioner had his mother place a three-way phone call to

20 Julie, in which Petitioner proposed marriage.  When Julie refused his proposal,

21 Petitioner began swearing at her.  Petitioner then began a series of harassing

22 telephone messages, which were played for the jury at trial.  On December 3 and 4,

23 2002, Petitioner left approximately fifteen messages on Julie's answering machine.

24 Petitioner threatened to come after Julie if she called the police, stating at one

25 point, "[D]on't call the cops on me again, because if you do it's problems."  He

26 also stated that he would discredit and embarrass Julie if she testified against him

27

28                                                    2

1    in court, and would pursue legal action against her:

2        I hope and I pray that you call me before we go to court, because once
         I get into that courtroom a lot of shit is going to be revealed about you
3        that's going to embarrass the shit out of you. Because you think you got
         shit on me? Girl, I got fucking smut on you like a motherfucker, and it's
4        going to all come out.

5        . . . . Furthermore, after I discredit you in court and have you thrown out
         of court as a fucking witness I will come back, and I will sue you, and I
6        will have you charged with false arrest, intimidating me, as a restraining
         me, your roommate, as having no right to file a fucking false arrest – a
7        false arrest report. . . . I will subpoena you both into court, and I will
         have you both convicted of fucking, misdemeanor crimes that will both
8        get you at least six months to a year.

9        In several messages, Petitioner also threatened to have his sister contact Julie

10   and her roommate if they made trouble for him:

11       My sister is going to come introduce herself to [your roommate], because
         your roommate is not part of my fucking restraining order. My sister is
12       not part of your roommate's restraining order. My sister, you know what
         my sister is about, and if my sister has got to come down here, Julie, it's
13       going to be fucking hell for your roommate to pay. Because my sister
         is not going to let this happen to her brother, and I hope you're not going
14       to either.

15       . . . . Have a nice day, and I'll see you in court tomorrow. You open your
         mouth, and you say something stupid, and you get me put back in jail,
16       then I guarantee my sister will be at your house. That's a fact. Don't
         play with me. My sister ain't the kind of person that plays, and, uh, she
17       knows everything about you.

18   Between December 12 and December 18, 2002, Petitioner left fifty additional

19   messages on Julie's answering machine. When Julie left to spend the holidays

20   with her family, Petitioner left ten threatening messages on her family's answering

21   machine.

22       Petitioner also confronted Julie in person several times in December 2002.

23   On the first occasion, he approached her in a parking lot and demanded that she

24   drop the charges against him. On the second occasion, several days later, Julie saw

25   Petitioner's van parked down the street from her workplace. When she left work,

26   Petitioner followed her in his van, shouting at her and demanding that she drop the

27

28                                           3

charges.  When Julie stopped her car at a traffic light, he got out of his van, pounded on the windows of her car, and tried to open the doors.  He stopped chasing her only after she drove onto a freeway.  On the third occasion, Petitioner and a friend confronted Julie in a parking lot.  Petitioner demanded that Julie drop the charges and told her he was undergoing counseling.  Julie later called Petitioner to beg him to stop harassing her.

Petitioner was charged on August 7, 2003 with one count of stalking (Cal. Penal Code § 646.9(b)), one count of witness intimidation (Cal. Penal Code § 136.1(c)), and one count of making criminal threats (Cal. Penal Code § 422). The charges related to Petitioner's conduct on November 24, 2002, when he was arrested outside Julie's apartment for violating the restraining order, and to conduct after that date.  The jury convicted Petitioner on all three counts.  At the sentencing hearing, the court imposed an upper-term sentence of four years for Count 1, and doubled the four-year term to eight years under California's Three Strikes Law, Cal. Penal Code § 667(e)(1), because the offense was Petitioner's second felony strike conviction.  The court then imposed a term of one year for Count 2, to be served consecutively.  Although the court set a term of two years for Count 3, the court stayed imposition of that sentence, leaving Petitioner with a total prison term of nine years.

On December 7, 2004, Petitioner, represented by counsel, appealed to the California Court of Appeal, raising the same claims he raises in the present federal habeas petition.  The Court of Appeal affirmed the trial court's judgment on December 27, 2005.  The Supreme Court of California denied review.  Petitioner then filed a petition for writ of habeas corpus in the Sacramento County Superior Court on May 18, 2007, raising one claim: that his upper-term and consecutive sentencing was unconstitutional under Cunningham v. California, 549 U.S. 270

4

1   (2007).  The court denied the petition on July 2, 2007.

2       Petitioner filed this federal petition for writ of habeas corpus, pursuant to 28

3   U.S.C. § 2254, on August 23, 2007.

4                                   **DISCUSSION**

5       Petitioner asserts the following challenges to his convictions and sentence:

6   (1) the evidence was insufficient to support his convictions; (2) the jury reached a

7   "compromise verdict" rather than a unanimous verdict; (3) he was improperly

8   impeached with evidence of a prior conviction; (4) the trial court omitted an

9   element, improperly defined another element, and failed to instruct the jury

10  regarding lesser-included offenses of the stalking charge; (7) the trial court

11  erroneously defined a slang term used by Petitioner in a phone message; and (8)

12  Petitioner's upper-term consecutive sentences violated <u>Cunningham</u>, 549 U.S. 270

13  (2007), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

14  **A.      Standard of Review**

15      The petition is governed by the provisions of the Anti-Terrorism and

16  Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  AEDPA provides

17  the following standards for federal habeas review of state court decisions:

18      (d) An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be granted
19      with respect to any claim that was adjudicated on the merits in State
    court proceedings unless the adjudication of the claim–
20
21      (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
    determined by the Supreme Court of the United States; or
22
23      (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
    State court proceeding.
24
25  28 U.S.C. § 2254(d)(1)-(2).

26      The Supreme Court has stated that a federal court may grant habeas relief

27  under the "contrary to" clause "if the state court arrives at a conclusion opposite to

28                                        5

1  that reached by this Court on a question of law or if the state court decides a case

2  differently than this Court has on a set of materially indistinguishable facts."

3  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Habeas relief may be granted

4  under the "unreasonable application" clause "if the state court identifies the correct

5  governing legal principle from [the Supreme] Court's decisions but unreasonably

6  applies that principle to the facts of the prisoner's case."  Id.  To warrant habeas

7  relief, the state court's application of federal law must be more than erroneous; it

8  must be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

9        A federal habeas court's examination is focused on the "last reasoned

10  decision" of the state courts.  Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  The

11  "last reasoned decision" in this case is the December 27, 2005 decision of the

12  California Court of Appeal, except with respect to the Cunningham claim, for

13  which the "last reasoned decision" is the Superior Court's July 2, 2007 denial of

14  Petitioner's state habeas petition.

15  **B.    Sufficiency of the Evidence**

16        Petitioner's first challenge concerns the sufficiency of the evidence

17  underlying his convictions.  He challenges the jury's apparent reliance on Julie's

18  testimony, which he characterizes as inherently unreliable, internally inconsistent,

19  and inconsistent with her actions.  The California Court of Appeal rejected this

20  claim on direct review, accepting the jury's implicit determination that Julie's

21  testimony was credible and finding that her testimony, in combination with the

22  other evidence presented, was sufficient to support Petitioner's convictions.

23        In reviewing a sufficiency of the evidence challenge, the court must

24  determine whether, "viewing the evidence in the light most favorable to the

25  prosecution, any rational trier of fact could have found the essential elements of the

26  crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979)

27

28                                            6

1   (original emphasis).  The key question is not whether the court is convinced of the

2   defendant's guilt beyond a reasonable doubt, but rather, "whether rational jurors

3   could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d

4   303, 306 (9th Cir. 1991).

5   **1.     Count One**

6       Petitioner was charged in Count 1 with stalking while a restraining order

7   was in effect, in violation of Cal. Penal Code § 646.9(b), for his actions between

8   November 24, 2002 (the date of his arrest) and December 25, 2002.  A conviction

9   under section 646.9(b) requires the prosecution to prove that, while a restraining

10  order was in effect, the defendant "willfully, maliciously, and repeatedly

11  follow[ed] or willfully and maliciously harasse[d] another person and . . . ma[de] a

12  credible threat with the intent to place that person in reasonable fear for his or her

13  safety."  The statute defines harassment as engaging in "a knowing and willful

14  course of conduct directed at a specific person that seriously alarms, annoys,

15  torments, or terrorizes the person, and that serves no legitimate purpose."  Cal.

16  Penal Code § 646.9(e).  At the time relevant here, the statute also stated that

17  harassment must be "such [conduct] as would cause a reasonable person to suffer

18  substantial emotional distress, and must actually cause substantial emotional

19  distress to the person."  Cal. Penal Code § 646.9(e) (2000).

20      Petitioner himself admitted during direct examination that the phone

21  messages he left for Julie were intended to place her in reasonable fear for her

22  safety.  Julie testified that the telephone calls and in-person confrontations scared

23  and disturbed her, and this reaction was confirmed by other witnesses.  Julie stated,

24  "I was scared by the calls.  I was very disturbed by them.  I don't think I would just

25  call them pitiful and pathetic.  I think they are extremely scary and disturbing."

26  Julie's mother testified that when Julie heard the messages Petitioner left on her

27

28                                              7

parents' answering machine while she visiting them over the holidays, Julie was "terrified, frightened, sick to her stomach. It was pretty bad." Moreover, the circumstances of Petitioner's confrontations, including such statements as "[D]on't call the cops on me again, because if you do it's problems," and "[Y]ou get me put back in jail, then I guarantee my sister will be at your house," and such conduct as pounding on the windows of Julie's car while she was stopped in traffic, were certainly sufficient to permit a rational jury to conclude that Petitioner's conduct would cause a reasonable person to suffer substantial distress. Petitioner's claim must be denied with respect to this count.

### 2.   Count Two

Petitioner was charged in Count 2 with witness intimidation, in violation of Cal. Penal Code § 136.1(c)(1), for the harassing phone calls he made on December 3 and 4, 2002. Under section 136(c)(1), the prosecution must prove (1) that the defendant knowingly and maliciously prevented or dissuaded, or attempted to prevent or dissuade, a witness or victim from attending or testifying at trial, reporting victimization to authorities, or seeking the defendant's arrest, and (2) that the defendant's act was "accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person." Cal. Penal Code § 136.1(c)(1).

The evidence of the taped phone calls Petitioner made on December 3 and 4 was sufficient to permit a rational jury to find that each of these elements was met. During the series of calls, Petitioner attempted to dissuade Julie from giving testimony against him in court, both by threatening her with violence ("I'll see you in court tomorrow. You open your mouth, and you say something stupid, and you get me put back in jail, then I guarantee my sister will be at your house.") and by stating he would disgrace her in court ("I hope and I pray that you call me before

8

we go to court, because once I get into that courtroom a lot of shit is going to be revealed about you that's going to embarrass the shit out of you."). He also attempted to dissuade her from reporting him to the police or seeking his arrest, again threatening her with violence: "[D]on't call the cops on me again, because if you do it's problems." Petitioner's claim that this count was not supported by sufficient evidence is without merit and will be denied.

### 3.    Count Three

In Count 3, Petitioner was charged with making criminal threats against Julie, in violation of Cal. Penal Code § 422, for the harassing phone calls made on December 3 and 4, 2002. Section 422 requires proof that the defendant (1) willfully and unlawfully threatened to commit a crime which would result in death or great bodily injury to another person, (2) with the specific intent that the statement be taken as a threat, (3) causing the threatened person "reasonably to be in sustained fear for his or her own safety or for his or for his or her immediate family's safety." "Immediate family" includes anyone who resides in the threatened person's household.

The evidence presented at trial, including Julie's testimony and the tapes of Petitioner's telephone calls, was clearly sufficient to permit a rational jury to conclude that Petitioner threatened Julie with death or great bodily injury, with the specific intent that his statements would be taken as threats. For example, Petitioner stated that if Julie made trouble for him, he would have his sister attack Julie and her roommate: "You open your mouth, and you say something stupid, and you get me put back in jail, then I guarantee my sister will be at your house. That's a fact. Don't play with me. My sister ain't the kind of person that plays, and, uh, she knows everything about you."

Petitioner contends, however, that the evidence was not sufficient to support

9

1    a conclusion that Julie actually feared for her safety, given her continuing contact

2    with him after the harassing phone calls were made.  In addressing this contention,

3    the Court of Appeal found the instances of Julie's contact with Petitioner after his

4    arrest consisted of the three-way phone call initiated by Petitioner's mother at his

5    urging and the occasions on which Petitioner confronted Julie at her workplace.

6    These were limited, initiated by Petitioner, and did not demonstrate a lack of fear

7    on Julie's part.  Absent any clear and convincing evidence to the contrary, this

8    factual determination is entitled to a presumption of correctness.  28 U.S.C. §

9    2254(e)(1).  Because these facts were sufficient to permit a rational jury to

10   conclude that Julie had a reasonable fear for her and her roommate's safety,

11   Petitioner's claim that there was insufficient evidence to support his conviction on

12   Count 3 must be denied as well.

13   **C.    "Compromise Verdict"**

14         Petitioner's second claim is that his right to due process was violated when

15   the jury reached a "compromise verdict."  He contends, "Some jurors voted for

16   guilt in exchange for agreement that jury would as part of its verdict condemn the

17   behavior of the victim in this case, not because defendant was guilty."  Petitioner's

18   claim depends on the following facts, as recounted by the Court of Appeal:

19   
20           Following its verdicts, the jurors also sent a note to the judge, stating that
        "[i]n conjunction with the verdict, some members of the jury cannot in
        good conscience provide a verdict without commenting on the conduct
21           and behavior of [the victim].  Although [the victim] was not on trial, her
        actions throughout this period partially contributed to the charges
22           brought forth against [defendant] in this matter."

23   On direct appeal, the Court of Appeal determined that the jury's note did not

24   indicate a lack of a unanimous verdict.  The court concluded:

25           [T]he jury's note demonstrates only a belief that the victim did not
        handle defendant in a rational or effective manner, and that her inability
26           to end her relationship with defendant contributed to the situation that
        occurred.  Nothing in the note indicates that the jury had any doubt
        whatsoever that defendant committed the charged acts.  The note stated
27   
28                            10

only that the victim's behavior contributed to the charges against
defendant; it did not suggest any doubt that the charged offenses
occurred.  The court properly construed the jury's note as expressing
concerns about the possible punishment defendant faced, not concerns
about defendant's guilt.

Petitioner fails to cite any clearly established Supreme Court precedent in support of his claim that the verdict in this case violated his right to due process, much less to demonstrate that the Court of Appeal's rejection of this claim was contrary to or an unreasonable application of such precedent.  Moreover, the Court of Appeal's determination that the jury's note pertained to Petitioner's sentence rather than his guilt was not an unreasonable reading of the facts.  There is no indication that the jury's verdict on Petitioner's guilt was anything but a unanimous verdict.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**D.     Impeachment with Prior Felony Conviction**

Petitioner's third contention is that his rights to due process, confrontation and a fair trial were violated when the prosecutor was permitted to impeach him on the stand with evidence of a 1988 felony robbery conviction.  Petitioner contends this conviction was too "remote and inflammatory" to be admissible at his trial in 2003.  The California Court of Appeal rejected this claim on the ground that, by failing to object contemporaneously at trial, Petitioner forfeited any claim of error on appeal.  Petitioner's failure to object at trial constitutes a procedural bar to review of this claim in federal habeas proceedings as well.

After the prosecutor stated during a pretrial hearing that he intended to impeach Petitioner on the stand with evidence of his 1988 robbery conviction, defense counsel stated, "It is a crime of moral turpitude but it is 15 years old, but I also recognize that Mr. Gleffe has been in prison on various parole violations, plus nonimpeachable priors and so I will leave it up to the Court's discretion."  After a

1   discussion among the court and counsel regarding Petitioner's record between

2   1988 and 2003, which included a felony drug possession conviction and seven

3   parole violations, the trial court concluded that, in light of this intervening criminal

4   history, the prior conviction was not too remote to be admissible for impeachment

5   purposes.

6        The procedural bar rule prevents federal courts from reaching the merits of a

7   claim brought in a § 2254 habeas petition if the petitioner failed to comply with the

8   state's requirements for preserving claims for appeal.  Park v. California, 202 F.3d

9   1146, 1150 (9th Cir. 2000).  For this rule to apply, the state procedural rule must

10  provide an "adequate and independent state law basis" on which the state court can

11  deny relief.  Id. at 1151 (quoting Coleman v. Thompson, 501 U.S. 722, 729-30

12  (1991)).  The state requirement must also have been "clear, consistently applied,

13  and well-established at the time of the petitioner's purported default."  Hanson v.

14  Mahoney, 433 F.3d 1107, 1113 (9th Cir. 2006) (citation omitted).  Under

15  California law, in order to preserve an objection regarding the admissibility of

16  evidence for appeal, a defendant is required to make a specific objection at trial.

17  People v. Clark, 3 Cal. 4th 41, 125-26 (1992) ("In the absence of a timely and

18  specific objection on the ground sought to be urged on appeal, the trial court's

19  rulings on admissibility of evidence will not be reviewed.").

20       Although Petitioner claimed on direct appeal that the 1988 conviction was

21  too remote to have any probative value and that the prejudicial effect of admission

22  outweighed any probative value, the Court of Appeal determined that defense

23  counsel's comments were not sufficiently specific to overcome California's

24  contemporaneous objection rule.  Indeed, the record reflects that Petitioner's

25  counsel made a strategic decision not to object.  Because the state law rule was

26  well-established at the time, and provided an independent ground for the Court of

27

28                        12

1 Appeal to deny the appeal from the trial court's ruling, Petitioner is procedurally

2 barred from maintaining this claim in federal habeas proceedings.  The claim is

3 denied.

4 **E.     Jury Instruction Errors**

5      Petitioner asserts a number of jury instruction errors, most of which pertain

6 to the instructions for Count 1, the stalking charge.  Petitioner contends the trial

7 court omitted an element of the offense, misdefined another element, and failed to

8 instruct the jury regarding lesser-included offenses.  In a challenge not related to

9 Count 1, Petitioner asserts the trial court erroneously defined a slang term

10 Petitioner used in one of his telephone messages to Julie.  For the reasons stated

11 below, the court finds no constitutional error in the trial court's jury instructions.

12      Jury instructions must inform the jury that the government bears the burden

13 of proving the defendant's guilt beyond a reasonable doubt on every element of the

14 offense.  Middleton v. McNeil, 541 U.S. 433, 437 (2004). In reviewing a habeas

15 petition alleging that an instruction omitted or misstated an element, the critical

16 question is "whether the ailing instruction by itself so infected the entire trial that

17 the resulting conviction violates due process."  Estelle v. McGuire, 502 U.S. 62, 72

18 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Even if there was

19 an error of constitutional dimension, habeas relief is warranted only if the error

20 actually affected the verdict.  Lara v. Ryan, 455 F.3d 1080, 1086 (9th Cir. 2006).

21      **1.     Failure to instruct the jury that Petitioner must have had**
         **knowledge of the existence of the restraining order to be convicted**
22       **on Count 1**

23      Petitioner's first alleged instructional error concerns the trial court's failure

24 to instruct the jury that in order to be convicted of stalking under Cal. Penal Code §

25 646.9(b), Petitioner must have had knowledge that a valid restraining order was in

26 effect.  The California Court of Appeal denied this claim on direct appeal.  The

27

28                                         13

Court of Appeal found, first, that under California state law, knowledge of the existence of a restraining order is not a statutory element of the offense.  The court then determined that even if any error had occurred, the error would be harmless, given the overwhelming evidence that Petitioner did know the restraining order was in effect when he made the telephone calls and in-person confrontations.  This was a reasonable conclusion.

There is no Supreme Court precedent requiring a trial court to instruct the jury on something that is not an element of the offense.  The instructional requirement relates to elements of the crime.  See Middleton, 541 U.S. at 437. Moreover, the Court of Appeal's determination that any error would be harmless was not contrary to or an unreasonable application of Supreme Court precedent, nor based on an unreasonable determination of the facts.  Under Supreme Court harmless-error precedent, an instructional error is typically harmless where the evidence against the defendant is otherwise overwhelming.  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also Leavitt v. Arave, 383 F.3d 809, 833 (9th Cir. 2004).  Here, the evidence is overwhelming that Petitioner knew that a restraining order was in effect.   He was present in court on October 16, 2002, when the permanent restraining order against him was entered.  He was arrested on November 24, 2002, for violating the restraining order.  In many of his telephone messages, he referred to the order, saying, for example, "My sister is going to come introduce herself to [your roommate], because your roommate is not part of my fucking restraining order," and, "If you want this all to end you do as I said. You get this shit off of me.  You get the restraining order dropped."  Therefore, Petitioner is not entitled to habeas relief on this claim.

**2.**     **Improper instruction regarding the meaning of Count 1's element of "substantial emotional distress"**

At the time of Petitioner's trial, California's stalking statute required that the

defendant's conduct "would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person." Cal. Penal Code § 646.9(e) (2000). After the court instructed the jury using the statutory language, the jury began deliberations. The next day, the jury asked the court for a definition of "substantial emotional distress." The court responded in writing:

> As used in instruction paragraph 9.16.2, the phrase "substantial emotional distress" means something more than everyday mental distress or upset.
>
> Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame. In determining whether a state of emotional distress was substantial, the jury may consider whether an ordinary, reasonable person would be unable to cope with it.
>
> Complete emotional tranquility is seldom attainable in this world, and some degree of temporary and trivial emotional distress is part of the price of living among people. The phrase "substantial emotional distress" therefore entails a serious invasion of the victim's mental tranquility. The intensity and duration of the distress are factors to be considered.

Petitioner asserts the court's use of this instruction, rather than an instruction incorporating language from Schild v. Rubin, 283 Cal. Rptr. 533 (Cal. Ct. App. 1991), improperly lessened the prosecution's burden of proof on Count 1. In denying the identical claim on direct appeal, the California Court of Appeal emphasized that Schild addressed the definition of the phrase "severe emotional distress" as used in the context of the tort of intentional infliction of emotional distress. The Court of Appeal held that the trial court's instruction was proper under People v. Ewing, 76 Cal. App. 4th 199, 210-11 (1999), which held that the term "substantial emotional distress," as used in section 646.9, denotes a lesser degree of distress than "severe emotional distress." The Court of Appeal stated, "To rely on cases involving severe emotional distress to define substantial emotional distress would be to equate the two principles. We agree with the Ewing

1  court that these terms are not interchangeable."

2      To the extent Petitioner claims an instructional error under state law, his

3  claim is not cognizable on federal habeas review.  Estelle, 502 U.S. at 67-68.  To

4  the extent he asserts that the instruction violated due process by lessening the

5  government's burden of proof, his claim is without merit.  The instruction given by

6  the trial court did not lessen the prosecution's burden of proving the substantial

7  emotional distress element of the stalking offense.

8      Even if the trial court had given the Schild definition describing "severe

9  emotional distress" as "highly unpleasant mental suffering or anguish from socially

10 unacceptable conduct . . . . that no reasonable person in a civilized society should

11 be expected to endure," 283 Cal. Rptr. at 537 (internal quotation marks, alterations

12 and citations omitted), Petitioner's threatening physical confrontations and more

13 than fifty threatening phone calls would still have provided a basis for the jury to

14 return a conviction on Count 1.

15     Accordingly, the court denies Petitioner's claim of instructional error

16 regarding the definition of the term "substantial emotional distress."

17     **3.    Failure to instruct the jury regarding lesser-included offenses of
            Count 1**

18
19     Petitioner contends the trial court erred by failing to give lesser-included

20 offense instructions regarding the offense of simple stalking under Cal. Penal Code

21 § 646.9(a) and the offense of intentional and knowing violation of a protective

22 order under Cal. Penal Code § 273.6.  The Court of Appeal determined that, under

23 California law, Petitioner was not entitled to either instruction.  The court stated,

24 "Instructions on a lesser included offense are necessary only if there is substantial

25 evidence to warrant concluding that [Petitioner] was guilty of only the lesser

26 offense and not the greater."  Because no clearly established Supreme Court

27 authority required the trial court to give lesser-included instructions in this case,

28                                              16

the Court of Appeal's finding of no error was not contrary to or an unreasonable application of any federal law.  See Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004)

Due process does not require a lesser included instruction in a non-capital case when the evidence does not support it.  In Beck v. Alabama, 447 U.S. 625, 627 (1980), the Supreme Court held that capital defendants have a due process right to receive lesser-included offense instructions when the facts of the case could support conviction on a lesser charge.  The Court has never held that this right applies in non-capital cases.  Moreover the right exists in capital cases only where the evidence supports the instruction.  Here, the prosecution presented overwhelming evidence that Petitioner's harassing and threatening conduct took place while a restraining order was in effect, demonstrating that Petitioner's conduct exceeded either simple stalking or a mere restraining order violation.  The evidence did not, therefore, support a lesser-included offense.  Petitioner's claim is denied.

**4.    Improper instruction regarding the meaning of "tax" in one of Petitioner's telephone messages**

During one of Petitioner's telephone messages to Julie on December 4, 2002, he stated, "You come to court and fuck me up, I end up in jail, plan on my sister taxing your ass."  Petitioner was asked about this statement during cross-examination, and had the following exchange with the prosecutor and the court:

Prosecutor:  What did you mean when you said, "plan on my sister taxing your ass"?

Petitioner:  I just wanted to get her attention, shake her up.  I didn't mean anything by it.

Prosecutor:  Did you intend to scare her?

Petitioner:  At this point I was just trying to get her attention.

Prosecutor:  At that point in time, did you intend to place her in

| | | |
|---|---|---|
| | | reasonable fear for her safety? |

Petitioner:   No.

. . . .

Court:   What do you mean, you wanted to shake her up but you didn't want to place her in fear for her own safety?

Petitioner:   I wanted to shake her up and call me.  That's it.

Court:   If she was going to be shaken up – why would she be shaken up?  I mean, I see kind of a disconnect here between your trying to shake her up but not place her in fear for her safety.

Petitioner:   I didn't want to place her in fear.  I wanted to scare her.  Yeah.  You can say scare.

. . . .

Court:   What does taxing mean?

Petitioner:   I didn't mean anything.  I just –

Court:   What does it mean to you?

Petitioner:   Taxing?  Dealing with her.

On the last day of deliberations, the jury sent a written communication to the court requesting a definition of the term "tax."  The court sent the following written response:

"Definition of 'tax' used in slang terms 'taxing your ass.'"

The meaning of the word "tax" is best determined from the context in which the defendant used the word.  That is for the jury to determine.  The Random House Webster's College Dictionary definition of the word "tax" is the non-fiscal context is as follows:

4.   to make serious demands on or of; burden; strain; *to tax one's resources*.
5.   to reprove or accuse; censure or charge; *to tax a person with laziness*.

As you may recall, the defendant was asked several times when he testified to say what he meant by that phrase.  He testified, variously, that he wanted to get [Julie's] attention; that it didn't mean anything; that it was just his way of dealing with her; that he meant to shake her up; that he wanted to scare her.

I must emphasize, however, that what exactly the defendant meant when

18

he uttered those words on the voice mail message is for the jury to determine. The dictionary definition supplied above, and the references to the defendant's testimony, are simply offered as the assistance that you have requested.

Petitioner contends that the trial court's definition of the word "tax" implied and intent to injure. He contends, "Definition used by court permitted jury to fill gap in prosecution's case by permitting jury to infer that petitioner expressed an intention to use force or inflict injury. This improperly lightened the prosecution's burden of proof."

Courts frequently look to a dictionary definition to respond to a jury's inquiry regarding the meaning of a term, or refer the jury to testimony given at trial that is relevant to such an inquiry. No federal or Supreme Court authority bars such procedures. The California Court of Appeal determined that the trial court's instruction did not lessen the prosecution's burden of proof or otherwise prejudice Petitioner, and this holding was neither contrary to nor an unreasonable application of any clearly established Supreme Court precedent.

**F.     Constitutionality of Upper-Term Consecutive Sentence under <u>Blakely v. Washington</u> and <u>Cunningham v. California</u>**

At Petitioner's sentencing hearing, the court imposed an upper-term sentence of four years for Count 1, stalking, on the ground that Petitioner had served two prior prison sentences. The court doubled the four-year term to eight years on the ground that the stalking offense was Petitioner's second felony strike conviction, and Petitioner does not appear to challenge this calculation. The court then imposed a term of one year for Count 2, witness intimidation, to be served consecutively. The court set a term of two years for Count 3, criminal threats, but stayed imposition of that sentence, leaving a total term of nine years.

Petitioner contends his constitutional rights were violated when the trial court imposed an upper-term sentence on Count 1, on the ground that he had

1  served two prior prison terms.  He relies in a line of Supreme Court cases

2  beginning with Apprendi v. New Jersey, 530 U.S. 466 (2000), and ending with

3  Cunningham, 549 U.S. 270, which established that California courts may not

4  sentence a defendant to an upper-term sentence on the basis of facts not admitted

5  by the defendant or found by the jury, other that the fact of a prior conviction.

6  Petitioner also challenges the court's imposition of a consecutive sentence on

7  Count 2.  For the reasons set forth below, both claims are denied.

8      Petitioner raised the challenge to the upper-term sentence on direct appeal,

9  before the Supreme Court had decided Cunningham.  The California Court of

10  Appeal denied the claim, and the California Supreme Court denied review.

11      The United States Supreme Court decided Cunningham in 2007, holding that

12  California's determinate sentencing law ("DSL") violated the Sixth Amendment.

13  See Cunningham, 549 U.S. at 293.  Petitioner then filed a state habeas petition

14  challenging his sentence under Cunningham.  Cunningham is retroactively

15  applicable to Petitioner's case.  See Butler v. Curry, 528 F.3d 624, 636 (9th Cir.

16  2008).

17      Under California's determinate sentencing regime, many criminal statutes

18  specify three sentences that may be imposed (a lower term, middle term, and upper

19  term), depending on the circumstances of the case.  For example, the statute of

20  conviction for Petitioner's stalking offense provides for a lower term of two years,

21  a middle term of three years, and an upper term of four years.  See Cal. Penal Code

22  § 646.9(b).  At the time Petitioner's conviction became final, the DSL provided,

23  "When a judgment of imprisonment is to be imposed and the statute specifies three

24  possible terms, the court shall order imposition of the middle term, unless there are

25  circumstances in aggravation or mitigation of the crime."  Cal. Penal Code §

26  1170(b) (2005).  The California Rules of Court in effect at the time of sentencing

27

28                               20

permitted a trial judge to find such aggravating and mitigating circumstances by a preponderance of the evidence.  Cal. R. Ct. 4.420(b) (1977).  The Rules of Court also provide a non-exhaustive list of aggravating and mitigating factors, including factors relating to the crime as well as factors relating to the defendant, such as prior adult convictions.  See Cal. R. Ct. 4.421.

Before Cunningham, Supreme Court decisions established that any fact that increases a defendant's sentence beyond the statutory maximum must be admitted by the defendant or submitted to a jury and proved beyond a reasonable doubt.  See United States v. Booker, 543 U.S. 220 (2005); Blakely v. Washington, 542 U.S. 296 (2004); Apprendi, 530 U.S. 466 (2000).  Following directly from Blakely, the Court thus held in Cunningham that under California's DSL, the "statutory maximum" referred to in the predecessor cases is the middle-term sentence, meaning that an upper term cannot be imposed on the basis of facts not admitted by the defendant or found by the jury.  Cunningham, 549 U.S. at 868.  The important exception to this rule is enhancement of a sentence on the basis of a prior conviction.  The Supreme Court recognized in Cunningham, as it had in prior cases, that enhancement of a sentence on the basis of prior convictions does not violate the Sixth Amendment.  Cunningham, 549 U.S. at 282; accord Blakely, 542 U.S. at 301; Apprendi, 530 U.S. at 490; Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998).

Petitioner asserts that he is entitled to be resentenced because the trial court imposed an upper-term sentence on the basis of his two prior prison terms, rather than enhancing his sentence on a permissible basis such as a prior conviction or some other fact found by the jury.  See Cunningham, 549 U.S. at 868; Blakely, 542 U.S. at 303; Apprendi, 530 U.S. at 490.  The state habeas court denied the claim on the ground that any error in imposing an upper-term sentence with reference to

21

1   Petitioner's prior "prison terms" was harmless beyond a reasonable doubt because

2   the terms represented prior convictions which provided a permissible basis for

3   enhancing Petitioner's sentence.  For the following reasons, this court agrees that

4   any constitutional error in imposing Petitioner's sentence was harmless.

5       California law permits trial judges to enhance a sentence to the upper-term if

6   a defendant has suffered any prior adult convictions.  See Cal. R. Ct. 4.421(b)(2).

7   Using Petitioner's prior convictions, including his 1988 robbery conviction and a

8   subsequent drug possession conviction, to enhance his sentence would not violate

9   the Constitution.  Cunningham, 549 U.S. at 282.  Therefore, the state habeas court

10  was not unreasonable in determining that any error in enhancing the sentence on

11  the basis of the prior prison terms was harmless beyond a reasonable doubt,

12  because the trial court's enhanced sentence was supported by the prior convictions

13  associated with those prison terms.  Petitioner is not entitled to habeas relief on this

14  claim.

15      Petitioner's final challenge is to the trial court's imposition of a consecutive

16  sentence for Count 2, witness intimidation.  He contends that the court violated his

17  Sixth Amendment right to a jury trial by imposing a consecutive sentence on the

18  basis of facts he argues were not found by the jury – namely, that Count 2 involved

19  "different conduct" than Count 1, stalking.  The Supreme Court has expressly held,

20  however, that the Apprendi line of cases does not prohibit judges from making the

21  factual determinations necessary for imposition of consecutive rather than

22  concurrent sentences.  Oregon v. Ice, 129 S. Ct. 711, 714-15 (2009).  Petitioner's

23  claim regarding the imposition of a consecutive sentence for Count 2 must fail.

24                                    **CONCLUSION**

25      For the reasons stated above, the Court DENIES the petition for writ of

26  habeas corpus.

27

28                                         22

1    IT IS SO ORDERED.

2

3    DATED:      August 13,  2009

4

5                                            /s/ Mary M. Schroeder

6                                            MARY M. SCHROEDER,
                                             United States Circuit Judge
7                                            Sitting by designation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   23